IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JAMES WELDON KING                                                                                       PLAINTIFF

v.                                         NO. 4:15-cv-00112 JM/PSH

SHERRA SPURGERS KING, BARRY WAYNE SPURGERS,                         DEFENDANTS
ELIZABETH ANN SPURGERS, and UNITED STATES OF AMERICA

FINDINGS AND RECOMMENDATION

INSTRUCTIONS

The following proposed Findings and Recommendation have been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

RECOMMENDATION

INTRODUCTION. Plaintiff James Weldon King commenced the case at bar by filing a pro se complaint in Phillips County, Arkansas, Circuit Court. The case was subsequently removed to federal court where defendants Sherra Spurgers King, Barry Wayne Spurgers, and Elizabeth Ann Spurgers ("Spurgers defendants") filed a motion to dismiss. See Document 21.[1] Because the defendants filed their motion, in part, pursuant to Federal Rule of Civil Procedure 12(b)(6) and accompanied the motion with exhibits that were not excluded, the motion was construed as one for summary judgment pursuant to Federal Rule of Civil Procedure 56. The parties were given an opportunity to submit materials in support of, and in opposition to, the motion for summary judgment, and the deadline for doing so has now passed. After reviewing the parties' pleadings and exhibits, the undersigned recommends that the defendants' motion be granted.[2] James Weldon King's complaint should be dismissed and judgment entered for all of the defendants.[3]

---

[1] United State District Judge James M. Moody, Jr., referred the case to the undersigned for recommended disposition. See Document 25.

[2] Rule 56(a) provides, in part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

[3] In addition to joining the Spurgers defendants, James Weldon King also joined Gerald Wayne Spurgers, Carrie Land, and Ward Seal, all of whom were agents with the Federal Bureau of Investigation ("FBI"). The United States of America ("USA") was substituted for the FBI agents, see Document 9, and the claims against the USA were dismissed without prejudice because James Weldon King failed to exhaust his administrative remedies, see Document 19. Because the USA has been now been dismissed, the undersigned will devote no attention to the claims made against Gerald Wayne Spurgers, Carrie Land, and Ward Seal.

FACTS. The undersigned has reviewed the parties' pleadings and exhibits and finds the facts to be as follows:

1. James Weldon King and Sherra Spurgers King were married in 1986, and it was through the marriage that James Weldon King became acquainted with Sherra Spurgers King's father, Barry Wayne Spurgers; her mother, Elizabeth Ann Spurgers; and Sherra Spurgers King's brother, Gerald Wayne Spurgers. See Document 2 at 2.

2. Gerald Wayne Spurgers came to be employed as an agent with the Federal Bureau of Investigation ("FBI") in 1996. See Document 2 at 2-3.

3. Sherra Spurgers King, Gerald Wayne Spurgers, and other members of her extended family knew, or eventually learned, that James Weldon King was a convicted felon who possessed firearms, oftentimes obtaining firearms from members of Sherra Spurgers King's extended family. See Document 2 at 3-5.

4. In 2009, the marriage between James Weldon King and Sherra Spurgers King ended in divorce. See Document 2 at 5.

5. As a part of the divorce, James Weldon King was given visitation rights with the daughter he shared with Sherra Spurgers King. See Document 2 at 5-6.

6. James Weldon King later requested and obtained a modification of those visitation rights. See Document 2 at 6.

7. At some point, James Weldon King was confronted by Sherra Spurgers King and members of her extended family and allegedly threatened with retaliation for his efforts in obtaining a modification of his visitation rights. See Document 2 at 6-7.

8. James Weldon King was allegedly told that Gerald Wayne Spurgers would use his position as an FBI agent to punish James Weldon King. See Document 2 at 6-7.

9. At some point, the FBI began investigating James Weldon King; during the course of the investigation, FBI agents Carrie Land and Ward Seal learned from local law enforcement officers that James Weldon King was a felon who had firearms in his possession. See Document 2 at 7-8; Document 30 at 2.

10. Carrie Land requested and obtained a warrant from United States Magistrate Judge Joe Volpe to search James Weldon King's residence. See Document 2 at 8.

11. Law enforcement officials executed the warrant, and the search of James Weldon King's residence uncovered fifty-eight firearms. See Document 2 at 8; Document 30 at 2.

12. James Weldon King was arrested and charged by federal criminal complaint with being a felon in possession of a firearm. See Document 2 at 8; Document 30 at 2.

13. James Weldon King was subsequently indicted in the United States District Court for the Eastern District of Arkansas in case number 4:13-cr-00036 BRW with one count of being a felon in possession of a firearm and one count of being in possession of an unregistered firearm. See Document 2 at 9. See also USA v. King, 4:13-cr-00036 BRW.

14. The United States of America opposed James Weldon King's pre-trial release, which led to a series of pleadings and hearings on that question. See Document 2 at 9-11.

15. United States Magistrate Judge Thomas Ray eventually determined that James Weldon King should be detained pending trial. See Document 2 at 10.

16. The United States of America and James Weldon King eventually entered into a plea agreement in which he admitted to being a felon, admitted to possessing an unregistered firearm, and agreed to plead guilty to one count of possessing an unregistered firearm. See Document 2 at 11; Document 30 at 2-3.

17. James Weldon King pleaded guilty in accordance with the terms of the plea agreement, and United States District Judge Billy Roy Wilson sentenced James Weldon King in 2014 to forty-six months imprisonment. See Document 2 at 12.

PLEADINGS. James Weldon King commenced this case by filing a complaint in which he advanced the following three state law claims: abuse of process, outrage, and civil conspiracy. In the abuse of process claim, he alleged that the Spurgers defendants "devised a scheme to destroy the relationship between [James Weldon King] and his daughter" and used the judicial process to "incriminate, convict, and imprison [him]." See Document 2 at 7. In the outrage claim, he alleged that the Spurgers defendants "employed the power of the FBI to estrange [him] from his daughter for vindictive purposes." See Document 2 at 13. In the civil conspiracy claim, James Weldon King alleged that the Spurgers defendants conspired to abuse the judicial process and commit outrageous acts in order to damage his relationship with his daughter. As an example of the civil conspiracy, he alleged that the Spurgers defendants invoked Gerald Wayne Spurgers' name and position as the "instrument [they] would use to destroy [James Weldon King's] relationship with his daughter" and ensure that James Weldon King never saw his daughter again. See Document 2 at 14.

The Spurgers defendants responded to James Weldon King's complaint by filing the pending motion. In the motion, they first maintained that James Weldon King failed to serve them with a summons and therefore failed to comply with the requirements for proper service of process. Second, they maintained that James Weldon King failed to state a claim for relief.

James Weldon King filed a response to the Spurgers defendants' motion in which he maintained that he had properly served them with a summons and copy of the complaint. It was therefore his position that he had complied with the requirements for proper service of process. James Weldon King additionally maintained that United States District Judge James M. Moody, Jr., had previously denied motions to dismiss filed by the Spurgers defendants, and the motion at bar was nothing more than an attempt to re-litigate issues that Judge Moody had already addressed and resolved in James Weldon King's favor.

It is not clear whether James Weldon King properly served the Spurgers defendants with a summons and copy of the complaint. Rather than wrestle with that question, the undersigned will bypass it and address the Spurgers defendants' challenge to the evidence supporting James Weldon King's claims.

ANALYSIS. At the outset, two points are in order. First, the undersigned recognizes that James Weldon King is proceeding without the assistance of counsel. As a result, his pro se pleadings have been liberally construed. See Estelle v. Gamble, 429 U.S. 97 (1976).

Second, the undersigned is not persuaded that the Spurgers defendants' motion

should be denied simply because it is, or may be, a re-filing of their previously denied motions to dismiss. It is true that the defendants filed motions to dismiss before this case was removed to federal court, see Documents 3, 4, 18, and Judge Moody denied the motions, see Document 19. It does not appear, though, that he foreclosed their filing of a second motion.

I. ABUSE OF PROCESS. James Weldon King's first claim is an abuse of process claim. In the State of Arkansas, the tort of abuse of process requires the plaintiff to prove the following elements: "(1) a legal procedure set in motion in proper form, even with probable cause and ultimate success; (2) the procedure is perverted to accomplish an ulterior purpose for which it was not designed; and (3) a willful act is perpetrated in the use of process which is not proper in the regular course of the proceeding." See National Bank of Arkansas v. River Crossing Partners, LLC, 2011 Ark. 475, 385 S.W.3d 754, 761 (2011). In that case, the Arkansas Supreme Court also observed the following:

> ... The test of abuse of process is whether a judicial process is used to extort or coerce. Routh Wrecker Serv., Inc. v. Washington, 355 Ark. 232, 980 S.W.2d 240 (1998). The key to the tort is the improper use of process after its issuance to accomplish a purpose for which the process was not designed. Harmon v. Carco Carriage Corp., 320 Ark. 322, 895 S.W.2d 938 (1995). Thus, it is the purpose for which the process is used, once issued, that is important in reaching a conclusion. Sundeen v. Kroger, 355 Ark. 138, 133 S.W.3d 393 (2003). Abuse of process is a narrow tort. Union Nat'l Bank of Little Rock v. Kutait, 312 Ark. 14, 846 S.W.2d 652 (1993).

See Id. at 761-762.

Applying the foregoing law to the facts of this case, the undersigned begins by

finding that the Spurgers defendants did not initiate, nor were they involved in, the legal process resulting in James Weldon King's arrest in 4:13-cr-00036. Sherra Spurgers King's unrebutted affidavit contains the following representations, all of which the undersigned accepts as true:

> Before January 20, 2013, [i.e., the day of James Weldon King's arrest in 4:13-cr-00036] I had not spoken with the FBI agents nor any local law enforcement officials about [James Weldon King] having guns in his home.
>
> I had no conversations with my parents or anyone else about having any law enforcement agency arrest[] [James Weldon King] for possession of firearms. [I] never heard my parents, Barry [Wayne] Spurgers and Elizabeth [Ann] Spurgers, have any conversation about having James Weldon King arrested for possession of firearms.
>
> I never filed an affidavit for [a] warrant for arrest nor even made complaint to any authority [about] James Weldon King related to his possession of firearms.
>
> There was nothing I did that led to his arrest.

See Document 21, Affidavit of Sherra Spurgers King at 1-2. Barry Wayne Spurgers and Elizabeth Ann Spurgers filed unrebutted affidavits containing similar representations.[4]

Abuse of process does not turn on, though, who initiated the legal process.

---

[4] In Barry Wayne Spurgers' affidavit, he represents that he had no involvement in James Weldon King's arrest in 4:13-cr-00036, never spoke with the FBI agents who arrested him, never took any steps to have him arrested, and never had any conversations about having him arrested. See Document 21, Affidavit of Barry Wayne Spurgers. In Elizabeth Ann Spurgers' affidavit, she represents that she did not know James Weldon King was a felon who possessed firearms, never acted to have him arrested, and never discussed having him arrested with anyone. See Document 21, Affidavit of Elizabeth Ann Spurgers. The Spurgers defendants appear to suggest that James Weldon King's false representation on a political practice pledge led to his arrest in 4:13-cr-00036, but there is no evidence to substantiate that suggestion.

Instead, the tort turns, in part, on the existence of an ulterior purpose. In <u>Peterson v. Worthen Bank and Trust Company</u>, 296 Ark. 201, 753 S.W.2d 278, 279 (1988), the Arkansas Supreme Court noted the following with respect to that element:

> … The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club. There is, in other words, a form of extortion, and it is what is done in the course of negotiations, rather than the issuance of any formal use of the process itself, which constitutes the tort.

<u>See</u> <u>Peterson v. Worthen Bank and Trust Company</u>, 296 Ark. 201, 753 S.W.2d 278, 279 (1988) (internal quotations omitted).

In <u>Routh Wrecker Service, Inc. v. Washington</u>, 335 Ark. 232, 980 S.W.2d 240 (1998), the Arkansas Supreme Court applied the "ulterior purpose" element. In that case, Washington stopped payment on a check used to purchase an automobile on Routh's lot. The following then occurred:

> … Ronald Routh … contacted the prosecuting attorney's office and swore out an affidavit for a warrant of arrest for Washington. He averred in the affidavit that Washington had stopped payment on the check but had not returned [the automobile] to the premises nor the documentation for sale. … After [Washington's] arrest, … Washington's father called Routh. Routh told him that all he wanted was his money and that he would drop the charges if he was paid. Washington advised his father not to pay the [purchase price]. Immediately after the arrest, Washington's attorney contacted Routh and told him that the car was still on the lot, which Routh verified. Routh explained to the attorney that storage charges on the vehicle had accrued and should be paid.
> 	Routh did not drop the charges. On September 19, 1994, at the probable cause hearing in municipal court, the municipal judge found

> probable cause for a theft arrest based on Routh's testimony that Washington was given the car keys and legal documents and then stopped payment on the check. The case was certified to circuit court, where charges were not filed by the prosecuting attorney.

See Id. at 242. Washington filed an abuse of process claim against Routh and prevailed. Routh appealed, and the Arkansas Supreme Court affirmed. The appellate court held that "… after the arrest warrant, Routh allowed the case to proceed to a hearing in municipal court for the coercive purpose of collecting [the purchase price]," and there was enough evidence to support a judgment in Washington's favor. See Id. at 244.

James Weldon King alleges that the Spurgers defendants had ulterior purposes, i.e., to retaliate against James Weldon King for obtaining a modification of his visitation rights with his daughter and to destroy his relationship with his daughter. The evidence of their alleged ulterior purposes is scant. Save James Weldon King's boldface allegation, there is no evidence they had such purposes.

Assuming, arguendo, that the Spurgers defendants had ulterior purposes, it is not clear how accomplishing those purposes would have given them a "collateral advantage." It was for the state courts of Arkansas to decide James Weldon King's visitation rights, and that question had been decided. The legal process in 4:13-cr-00036 could not change that determination. He was a felon when the visitation determination was made, and his arrest in 4:13-cr-00036 did nothing to change that fact. It is also difficult to see how his arrest would destroy his relationship with his daughter.

Assuming, arguendo, that James Weldon King can satisfy the "ulterior purpose"

element, he cannot show that the Spurgers defendants committed a willful act to accomplish those purposes. James Weldon King's pleadings are long on speculation and conjecture, but there is no evidence the Spurgers defendants took any action, or failed to take an action they should have taken, to accomplish their purposes of retaliating against James Weldon King for obtaining a modification of his visitation rights with his daughter and destroying his relationship with her. For instance, there is no evidence that the Spurgers defendants made false representations in 4:13-cr-00036, see Harmon v. Carco Carriage Corporation, 320 Ark. 322, 895 S.W.2d 938 (1995) (party failed to disclose all the facts that were known to her and allowed case to proceed), or took any action after he was arrested, such as demanding that he agree to a revision of the visitation order or refrain from seeing his daughter, see Smith v. Nelson, 255 Ark. 641, 501 S.W.2d 769 (1973) (no action taken subsequent to filing of charges; thus, no extortion or coercion).

Notwithstanding the foregoing, James Weldon King maintains that the Spurgers defendants committed a willful act by "using" the FBI. He would have the undersigned infer that because Gerald Wayne Spurgers was an agent with the FBI and James Weldon King was arrested by agents with the FBI, the Spurgers defendants must have been the driving force behind the arrest. James Weldon King has failed, though, to offer any support for his assertion, and the undersigned is not willing to embrace the inference he proposes.

II. OUTRAGE. James Weldon King's second claim is an outrage claim. In the State

of Arkansas, the tort of outrage requires the plaintiff to prove the following elements:

> … (1) the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous, was beyond all possible bounds of decency, and was utterly intolerable in a civilized community; (3) the actions of the defendant were the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was so severe that no reasonable person could be expected to endure it. …

See Kiersey v. Jeffrey, 369 Ark. 220, 253 S.W.3d 438, 441 (2007) (internal quotations omitted). Arkansas courts give a narrow view to the tort and require "clear-cut proof to establish the elements in outrage cases." See Id. "Merely describing the conduct as outrageous does not make it so." See Id.

Applying the foregoing law to the facts of this case, the undersigned begins by finding that the Spurgers defendants did not intend to inflict emotional distress on James Weldon King nor know, or should have known, that emotional distress was the likely result of their conduct. The undersigned so finds for one reason: there is no evidence they took any action against him. There is no evidence they initiated, or were involved in, the legal process resulting in his arrest in 4:13-cr-00036. There is no evidence they made false representations in 4:13-cr-00036 or took any action after he was arrested, such as demanding that he agree to a revision of the visitation order or refrain from seeing his daughter. There is also no evidence they "used" the FBI to bring about his arrest.

Assuming, arguendo, that the Spurgers defendants "used" the FBI to bring about

James Weldon King's arrest in 4:13-cr-00036, that their "use" of the FBI was extreme and outrageous, and accepting that he suffered some measure of emotional distress as a result of his arrest, there is no evidence the Spurgers defendants were the cause of his distress. Instead, the cause of his distress was the fifty-eight firearms found during the search of his residence, none of which he could legally possess. The firearms led to his arrest, and there is no evidence the Spurgers defendants caused him to possess the firearms.

Additionally, even if the undersigned assumes that the Spurgers defendants "used" the FBI to cause James Weldon King's arrest in 4:13-cr-00036, that their "use" of the FBI was extreme and outrageous, that James Weldon King suffered some measure of emotional distress as a result of his arrest, and that the Spurgers defendants were the cause of his distress, the outrage claim still fails. James Weldon King has not alleged emotional distress so severe that no reasonable person could be expected to endure it. Specifically, he does not allege that the distress caused him any mental or physical suffering, such as depression and/or anxiety, loss of sleep, loss of appetite, frequent crying spells, or required any meaningful medical attention, such as counseling or hospitalization. See Givens v. Hixson, 275 Ark. 370, 631 S.W.2d 263 (1982) (entry of summary judgment for defendant on outrage claim affirmed despite evidence that plaintiff was depressed, could not sleep or eat, lost weight, and required hospitalization for a heart condition after the allegedly outrageous incident).

III. CIVIL CONSPIRACY. James Weldon King's final claim is for civil conspiracy. In

the State of Arkansas, the tort of civil conspiracy requires the plaintiff to prove the following: "that two or more persons have combined to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in itself unlawful, oppressive or immoral, but by unlawful, oppressive or immoral means, to the injury of another." See Ballard Group, Inc. v. BP Lubricants USA, Inc., 2014 Ark. 276, 436 S.W.3d 445, 455 (2014). The tort may be shown by direct or circumstantial evidence of an agreement between the conspirators or by evidence of an understanding between them. See Seachange International, Inc. v. Putterman, 79 Ark. App. 223, 86 S.W.3d 25 (Ark.Ct.App. 2002). "It also may be inferred from actions of alleged conspirators, if it be shown that they pursued the same unlawful object, each doing a part, so that their acts, although apparently independent, are in fact connected and cooperative, indicating a closeness of personal association and a concurrence of sentiment." See Mason v. Funderburk, 247 Ark. 521, 446 S.W.2d 543, 548 (1969).

Applying the foregoing law to the facts of this case, there is no evidence that the Spurgers defendants combined to accomplish a purpose that was unlawful or oppressive or combined to accomplish a lawful purpose by unlawful, oppressive, or immoral means. To the contrary, their unrebutted affidavits establish that they had took no actions, or even discussed taking any actions, leading to James Weldon King's arrest in 4:13-cr-00036. Specifically, they did not speak with law enforcement officers about him possessing firearms and did nothing that led to his arrest.

RECOMMENDATION. The pleadings and exhibits establish that there is no genuine

issue of material fact, and the Spurgers defendants are entitled to judgment as a matter of law. James Weldon King has failed to produce evidence in support of his claims of abuse of process, outrage, and civil conspiracy. The undersigned recommends that the Spurgers defendants' motion for summary judgment be granted. James Weldon King's complaint against them should be dismissed with prejudice, and judgment should be entered for all of the defendants.

    DATED this 26th day of January, 2016.

_____
UNITED STATES MAGISTRATE JUDGE